UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PABRINY THORNTON, *individually and on behalf of all others similarly situated*, | § <br> § Case No. 4:24-cv-00446 <br> § <br> § CLASS ACTION COMPLAINT <br> § |
| Plaintiff, | § |
| v. | § Jury Trial Demanded <br> § <br> § |
| SOLAR GRIDS LLC, | § <br> § |
| Defendant. | § <br> § |

## CLASS ACTION COMPLAINT

PABRINY THORNTON ("Plaintiff" or "Thornton"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following against SOLAR GRIDS LLC, ("Defendant" or "Solar Grids"):

## INTRODUCTION

1.  Plaintiff's Class-Action Complaint asserts a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

## BACKGROUND ON THE TCPA

2.  In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3.  A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

1

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

11. This Court has personal jurisdiction over Defendant, Solar Grids LLC, a Florida company, which systematically conducts business in the State of Texas.

12. Additionally, Defendant called Plaintiff unlawfully on her cell phone with a "832" area code, which is associated with the Greater Houston region of the State of Texas.

13. Through those acts, Solar Grids knowingly and purposefully availed itself to the State of Texas.

14. Plaintiff resided within this District at all times relevant hereto. Further, Plaintiff received the calls at issue and experienced the associated harm within this District.

15. Accordingly, personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391 (b)(2).

3

## PARTIES

16. Plaintiff is a natural person residing in Richmond, Texas 77406.

17. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

18. Defendant is a corporation with principal place of business, head office, or otherwise valid mailing address at 151 N. 8th Street, Suite 534, Lincoln, Nebraska 68508.

19. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

20. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

21. At all times relevant to this Complaint, Thornton owned a cellular telephone, the number for which was (832) XXX-8348.

22. At all times relevant to this Complaint, Thornton used the cell phone primarily for residential purposes, such as speaking with friends and family.

23. On or about December 17, 2019, Thornton registered her number on the Federal Do-Not-Call Registry to obtain solitude from unwanted telemarketing calls.

24. Thornton registered her number to avoid receiving unwanted telemarketing and solicitation calls.

25. At times encompassing, but not limited to, the spring and summer of 2020, Solar Grids engaged in a widescale telemarketing operation, where it placed telemarketing text messages and phone calls to consumers *in masse,* without having first obtained the consumers' valid express written consent.

26. Thornton did not ever consent in any manner to receiving telemarketing calls from Solar Grids, let alone provide the prior express written consent the TCPA requires.

27. Nonetheless, on or around June 24, 2020, Solar Grids placed a campaign of calls to Thornton soliciting solar franchising services.

28. A non-exhaustive list of Solar Grids' unlawful telemarketing calls to Plaintiff follows:

| Date/Time and number of calls | Caller ID /Agent Name |
|---|---|
| June 24, 2020 at 4:02 PM – 1 Phone Call | 702-610-8105 / unknown |
| June 24, 2020 at 4:04 PM – 2 Text messages | 702-610-8105 / Gary |
| June 24, 2020 at 3:58 PM – 3 Text messages | 727-472-4330 / unknown |
| June 24, 2020 at 3:59 PM – 1 Text messages | 727-472-4330 / Gary Smith |
| June 26, 2020 at 8:04 AM –3 Text messages | 727-888-6729 / unknown |
| June 26, 2020 at 8:06 AM –3 Text messages | 727-888-6729 / unknown |

29. Defendant's calls and text messages were not made for "emergency purposes."

30. Defendant knew or should have known its calls and text messages were unwanted.

31. Defendant's incessant calls and text messages were bothersome, disruptive and frustrating for Plaintiff.

32. Upon information and belief, Defendant conducts business in a manner which violates the Telephone Consumer Protection Act.

33. Defendant's calls were bothersome, invasive, disruptive and annoying, and further invaded upon Plaintiff's privacy.

### Direct and Vicarious Liability

34. Without having had the benefit of discovery to show otherwise, Thornton understands and therefore avers that Solar Grids is directly liable for the unsolicited calls because they were made directly by Solar Grids.

35. Alternatively, if discovery reveals that some or all of the calls were made by third-party/parties on behalf of Solar Grids, then Solar Grids is vicariously liable for those calls.

36. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

37. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

38. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

6

39. Defendant Solar Grids may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to Solar Grids.

40. While Plaintiff alleges Solar Grids is directly liable based on what he knows and understands at this time, if he learns the calls were made by agent(s) acting on Solar Grids behalf, Plaintiff seeks to hold Solar Grids vicariously liable for those calls.

## CLASS ALLEGATIONS

41. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

42. Plaintiff seeks to represent the following class:

> **Federal DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one phone call or text message from Solar Grids or someone acting on its behalf; (2) during a 12-month period; (3) where the calls were made in connection with a campaign to solicit goods and/or services; and (4) who had registered his or her number on the National Do Not Call Registry 31 days or more, before the calls or texts were received.

43. Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

44. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

45. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

7

46. On information and belief, Defendant has called/texted and continues to call/text people who have not expressed interest in Defendant's service. It is reasonable to expect that Defendant will continue to place such calls and send text messages absent this lawsuit.

47. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Defendant's communications were "solicitations" as defined by the TCPA;

   b. Whether Defendant had a proper method of obtaining valid "consent" from consumers before placing telemarketing calls;

   c. Whether Defendant's conduct violates the rules and regulations implementing the TCPA

   d. If Solar Grids hired vendor(s) to place calls and texts, whether an agency relationship exists, and/or if Solar Grids "ratified" its vendor(s)' violations to warrant the imputation of vicarious liability; and

   e. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

48. Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

49. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in consumer litigation, and class-actions. TCPA litigation and consumer law.

50. Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

51. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

52. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

53. Questions of law and fact, particularly whether calls are "solicitations", whether Defendant's lead source provided valid "consent", predominate over questions affecting only individual members.

54. Defendant's acts and omissions apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
## DEFENDANT VIOLATED THE DO-NOT-CALL RULES OF THE TCPA
## 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)

55. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

56. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered their telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

57. Defendant contacted Plaintiff despite the fact that Plaintiff's number was registered on the Do Not Call Registry since December 17, 2019.

58. Defendant called and texted Plaintiff on one or more occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

59. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law.

60. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

61. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**Wherefore**, Plaintiff, PABRINY THORNTON, respectfully prays for judgment as follows:

    a. Enter an order against Defendants pursuant to Rule 23 of the Rules of Civil Procedure, certifying this action as a class action and appointing Plaintiff as the class representative;

    b. Enter an order appointing Plaintiff's counsel Kimmel & Silverman as class counsel;

    c. Enter judgment in favor of Plaintiff and the 227(c) Class members for all damages and other relief available under the TCPA, 47 U.S.C. §

    227(c)(5)(B), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA under 47 U.S.C. § 227(c)(5)(C);

d.  Enter a judgment in favor of Plaintiff and the putative class that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from calling numbers registered on the National Do Not Call Registry;

e.  Award Plaintiff and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration; and,

f.  Award Plaintiff and the class such further and other relief, including but not limited to any applicable pre-judgment and/or post-judgment interest, and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that Plaintiff, **PABRINY THORNTON,** demands a jury trial in this case.

Respectfully submitted,

Dated: February 6, 2023            Kimmel & Silverman, P.C.

                        By: */s/ Jacob U. Ginsburg*
                        Jacob U. Ginsburg, Esq.
                        SDTX# 3568914
                        30 East Butler Ave.
                        Ambler, PA 19002
                        Telephone: (267) 468-5374
                        jginsburg@creditlaw.com
                        Email: teamkimmel@creditlaw.com